**Darrell KINCAID and Donald R. Sceifers, Plaintiffs–Appellants,**

v.

**Kendall I. VAIL, Defendant–Appellee.**

**No. 90–3510.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1992.

Decided Aug. 6, 1992.

Roslyn C. Lieb, Chicago Lawyers' Committee, James C. Schroeder (argued), Mayer, Brown & Platt, Chicago, for plaintiffs-appellants.

Shaw R. Friedman (argued), Bokland, Yandt & Friedman, LaPorte, Ind., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

When Darrell Kincaid and Donald Sceifers, inmates at the Indiana State Prison in Michigan City, attempted to file a civil suit against Superintendent Jack R. Duckworth in the LaPorte Superior Court, the court clerks refused their filings, first on the ground that the fee they sent was not the required amount, and then on the ground that the suit belonged in the small claims court. Mr. Kincaid and Mr. Sceifers subsequently brought an action in federal court under 42 U.S.C. § 1983, alleging that, by refusing to file their complaint, the clerks had deprived them of their constitutional right of access to the courts. They named as defendant Kendall I. Vail, the Clerk of the LaPorte Circuit Court. The district court granted summary judgment to the defendant, and we affirm.

I

BACKGROUND

A. *Facts*

Darryl Kincaid and Donald Sceifers are inmates in the Indiana State Prison in Michigan City. The two wished to sue Jack R. Duckworth, then superintendent of the prison, for reimbursement from the prison recreation fund of tuition and fees paid for correspondence courses they took through Indiana State University. According to their complaint in the district court, they first sent a check for filing fees, a cover letter, and a complaint to the LaPorte Superior Court No. 1 on March 14, 1983. Their check for $23 was returned to them with a letter, dated March 29, stating, "We are returning your check this date, as we do not have any filings or know what account you would like this to be placed." R.110. This letter bore the typed signature Kendall I. Vail, Clerk, LaPorte Superior Court.

The plaintiffs' next letter to the LaPorte Court is dated April 12, 1983. The plaintiffs sent it before receiving the clerk's letter of March 29,[1] and in it they inquired whether Mr. Vail had gotten their complaint and check. The following response was typed on the bottom of the plaintiffs' April 12 letter and sent to them: "As of this date nothing has been filed in our office. The next Court date will be June the 23rd, 1983, 10:00 A.M." Tr. at 11. This response was dated April 14, 1983.

■ In May, further exchanges of letters took place. The next letter contained in the record, from the plaintiffs to the defendant, informs Mr. Vail that, although they believe that Indiana law requires them to pay only $13 if they mail the summons themselves, they are nonetheless sending $23. It also states that, under Indiana law, they are entitled to file "in ANY superior or circuit court in the State, or if desired (and we do not) in Small Claims Court."[2] R.127. Typed in the bottom margin of this

---

1. In a status conference before Magistrate Judge Lee, Mr. Sceifers explained that "[w]hen a check comes back into the institution it goes to the business office and it sometimes takes days and even weeks before we have any knowledge that it has come back." Tr. at 12–13.

2. The plaintiffs are incorrect as to the $13 fee, *see* Indiana Code 33-1-9–1.1, but correct that Indiana law gives them the choice of filing in superior court. *See Matter of Public Law No. 305 and Public Law No. 309*, 263 Ind. 506, 334 N.E.2d 659, 668 (1975).

We note that a reasonable jury might be forced to deduce that some correspondence, missing from the record, preceded this letter: namely a letter from the plaintiffs submitting a fee of $13 and one from the clerks telling the

letter is the reply: "Per our Court Rules, this must be filed in County Court Small Claims: Superior Courts do not handle anything under $3,000.00." *Id.* The plaintiffs tried twice more to file in Superior Court, and were refused.[3] The clerks wrote to the plaintiffs that, according to Judge Martin and Judge Keppen, claims under a certain amount could be filed only in small claims court. The clerks also sent the plaintiffs forms and instructions for filing in small claims court.

Mr. Kincaid and Mr. Sceifers then submitted their complaint for filing in small claims court. In their cover letter, they noted: "[W]e filed this in Small Claims Court under protest as such denies plaintiffs guarantee of jury trial in civil case as provided by Indiana constitution, Article 1 Section 20 and for other reasons which will not be raised in this proceeding."[4] The complaint was entered on the docket of the small claims court on June 28, 1983, and a hearing was scheduled for September 29, 1983. At the small claims court hearing, the plaintiffs "requested that [the case] be dismissed because we didn't think it had jurisdiction anyway."[5] Tr. at 27. The notation on the small claims docket sheet states that the "court finds it lacks jurisdiction. Cause dismissed."

In the pre-trial conference, the plaintiffs stated that they asked the judge of the small claims court to transfer their case to the superior court. In early October, the plaintiffs wrote to the clerks saying that they did not have a copy of the docket sheet and asking that the case be transferred from small claims court to superior court. There was no court order that this be done, nor did the plaintiffs submit another filing fee. The clerks did not transfer the case, but merely sent the plaintiffs a copy of the small claims court docket sheet.

## B. *District Court Proceedings*

A preliminary pre-trial conference was held at the state prison in Michigan City before Magistrate Judge Gene Lee. The purpose of this conference was to "afford[ ] the Court an opportunity to become more familiar with the facts and issues in the case." The parties were not sworn. Magistrate Judge Lee questioned the plaintiffs and the defendant (present through his attorney) about the case, and took from the plaintiffs copies of letters and other documents, which he marked as exhibits. Magistrate Judge Lee gave the defendant 30 days in which to file a motion for summary judgment and reminded the plaintiffs that they would have 15 days afterward to respond to the motion.

plaintiffs that (1) their fee is insufficient and that (2) Judge Martin says they must file in small claims court.

3. On May 23, 1983, Mr. Kincaid wrote to Mr. Vail:

Once again we are returning to you complaint, summons and check of filing the civil action enclosed in the LaPorte Superior Court. No. 1.
I've been filing civil actions in both state and federal courts longer than you've been elected to Office of the Clerk.
In rejecting to file our civil action (enclosed) you stated:
Per our Court Rules, this must be filed in Small Claims:
Superior Courts do not handle anything under $3,000.00
The statement "Superior Courts do not handle anything under $3,000.00" is not a correct statement of the law. I.C. 33-5-31-4. Courts may adopt "local rules" governing court procedure as long as a rule does not contravene a

rule of the Indiana Supreme Court but a court may not adopt a rule regarding jurisdictional matters such as the amount in controversy....
R.137. On May 31, Mr. Kincaid wrote:
There is no trial by jury in the small claims court. I.C. 33-11.6-4-9. We never intended to waive the right of trial by jury, and a complaint without a jury demand does not constitute waiver nor foreclose the right to enter a demand. To preserve the right to trial by jury, we have made a demand therefor in the herein complaint.
Therefore, we request that the herein complaint be filed in LaPorte Superior Court No. 1.
R.135.

4. This letter was read into the transcript of the pretrial conference. *See* Tr. at 23.

5. At oral argument, the parties were unable to provide any further information as to why the case was dismissed.

The motion for summary judgment was made; the defendant asserted two grounds for summary judgment: (1) that he was not personally involved in the actions complained of and under section 1983 could not be held liable under a theory of respondeat superior; and (2) that, in any case, he was entitled to qualified immunity.

The plaintiffs responded to the motion for summary judgment, but did not include affidavits with their response. In their response, they asked the district court to "consider said evidence and exhibits submitted during the pre-trial hearing held on the 11th day of May, 1988, along with all other material submitted in this cause of action." R.105. Although the plaintiffs asserted that the statement of facts presented by the defendant in his motion for summary judgment was "directly refuted by the evidence and exhibits already included in the record of this Court which are included within the record of the pre-trial hearing held on the 11th day of May 1988," *id.,* they did not identify what specific factual allegations they were controverting or direct the court's attention to particular facts in the record. Although the plaintiffs did not include affidavits, they did attach to their response a copy of Mr. Vail's March 29 letter, returning their check for $23 because the clerks did not "have any filings or know what account you would like this to be placed." R.110.

The district court granted the defendant's motion for summary judgment.[6] Because the defendants had not submitted affidavits or otherwise set forth specific facts showing that there was a genuine issue for trial, the district court accepted as undisputed the evidence gathered from Mr. Vail's answers to the plaintiffs' interrogatories and an affidavit by Ms. Betty Tylisz, a deputy clerk in Mr. Vail's office. It refused to consider the statements made by plaintiffs and the exhibits submitted by them during the pretrial conference; according to the court, because those statements were unsworn, they did not constitute admissible evidence. Based on Mr.

Vail's answers to the interrogatories and Ms. Tylisz' affidavit, the court found the following facts:

In the early summer of 1983, the La-Porte County Clerk's Office received a complaint from Darrell Kincaid and Donald Sceifers along with a request that it be filed in LaPorte Superior Court No. 1. The complaint, which included a claim against Jack R. Duckworth, the superintendent of the ISP, contained a request for damages in the amount of $207.60. Tendered with the complaint was a check in the amount of $12.00 for the filing fee. According to Ms. Tylisz's affidavit, the $12.00 check submitted by the plaintiffs was insufficient to cover the filing fee in Superior Court No. 1. As a result, Ms. Tylisz contacted Judge Donald Martin of Superior Court No. 1 for instructions. Judge Martin directed that the complaint be returned to the plaintiffs and that they be informed that they should file their claim in the Small Claims Division of the LaPorte County Court, since the amount in controversy was only $207.60. Ms. Tylisz states that she thereafter returned the complaint and check to Darrell Kincaid and Donald Sceifers with an indication that the filing fee was insufficient and that the claim should be filed in the Small Claims Division of County Court. The plaintiffs subsequently resubmitted the complaint, again requesting it be filed in Superior Court No. 1. Ms. Tylisz states that she again consulted with Judge Martin, who indicated that the complaint should be returned to the plaintiffs with instructions that they should file it in the Small Claims Division of County Court. Ms. Tylisz thereupon returned the complaint to Mr. Kincaid and Mr. Sceifers, indicating that the fee tendered was insufficient for filing in Superior Court and that the claim should be filed in the Small Claims Division of the LaPorte County Court.

On June 28, 1983, according to Ms. Tylisz, the Clerk's Office received a let-

---

**6.** The case was transferred to Magistrate Judge Pierce, who considered and decided the motion for summary judgment.

ter from Mr. Kincaid enclosing a claim for filing in Small Claims Court. Ms. Tylisz states that the plaintiffs' complaint was filed in the Small Claims Division of the LaPorte County Court on the same date. Ultimately, the Small Claims Court determined that it lacked jurisdiction and dismissed the plaintiffs' complaint. Thereafter, during the early part of October, 1983, the LaPorte County Clerk's Office received a letter from Darrell Kincaid dated October 3, 1983, directing that the Small Claims docket be transferred to Superior Court No. 1. According to Ms. Tylisz, Mr. Kincaid and Mr. Sceifers did not provide the Clerk–Treasurer's office with any judicial order directing that the case be transferred to Superior Court No. 1, nor did they tender any filing fee so as to permit the Clerk's Office to file their claim as a new cause of action in the Superior Court. In his answers to the plaintiffs' interrogatories, Mr. Vail noted that he had no authority to transfer the case from one court to another.

Memorandum and Order, at 4–6 (R.113) (Oct. 11, 1990). The district court concluded that the plaintiffs had failed to demonstrate that they were denied access to the courts by any wrongful action of Vail's, because, based on the defendant's uncontradicted evidence, the plaintiffs had never tendered the correct filing fee for instituting an action in the Superior Court. The district court also concluded that, even if plaintiffs should have been allowed to file in Superior Court, Mr. Vail had absolute quasi-judicial immunity because he had acted at a judge's direction.

## II

## ANALYSIS

### A. *Issues*

Mr. Kincaid and Mr. Sceifers contend that they were deprived of a meaningful opportunity to respond to the defendant's motion for summary judgment and that the district court erred when it granted summary judgment without considering either the record of the pretrial conference, the correspondence they attached to their re-

sponse, or the statements in their verified complaint. That evidence, they allege, demonstrates the existence of genuine issues of material fact which made summary judgment inappropriate. They argue as well that, even if that evidence is not considered, the defendant in moving for summary judgment did not carry his burden of establishing that no material disputed issues existed. In addition, they challenge the district court's conclusion that Mr. Vail was protected by absolute immunity.

### B. *Discussion*

As a preliminary matter, we consider the district court's refusal to consider the evidence from the pretrial conference. In opposing summary judgment, the plaintiffs asked the district court to consider statements and documents from the record of the preliminary hearing. The plaintiffs argue that the district court abused its discretion in refusing to consider this evidence in the absence of an objection from the defendants. They also contend that, because the complaint was verified, the district court should have treated statements in it that were based upon personal knowledge as affidavits and considered them in opposition to the motion for summary judgment. *See, e.g., Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987).

This court has been solicitous of pro se plaintiffs, especially pro se prisoner plaintiffs, confronting the procedural requirements of responding to Rule 56 motions. We have emphasized that the technical rigors of summary judgment do not apply to pro se prisoners. *See Hossman v. Blunk*, 784 F.2d 793, 796 (7th Cir.1986); *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir.1985). Allegations in pro se pleadings are to be construed liberally, applying substantially less stringent standards than those applied to pleadings drafted by professional counsel. *Hossman*, 784 F.2d at 797; *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). As the Fifth Circuit has stated, "summary judgment is a valuable judicial tool. Because the consequences are so se-

vere, we must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir.1980).

■ In *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), this court required that, if a defendant in a suit brought by a prisoner pro se moves for summary judgment, he must warn the plaintiff in plain English of the consequences of not submitting affidavits to oppose the motion for summary judgment. If the defendant fails to warn the pro se prisoner plaintiffs, the court must do so. *Lewis v. Faulkner,* 689 F.2d at 102. The reasons for this "prophylactic rule" are plain; for a "fair and just disposition of a claim," the party opposing summary judgment must have a reasonable opportunity to demonstrate that there is a genuine issue of material fact. *Ross,* 777 F.2d at 1219. "When applied to a pro se prisoner litigant in a civil suit, this 'reasonable opportunity' presupposes *notice.* Mere time is not enough, because it is not realistic to impute to a prisoner without legal background the awareness of failing to respond with an opposing affidavit to a motion for summary judgment."[7] *Id.* (emphasis in original). "Just as we hold the *pro se* complaint to less stringent standards than formal papers drafted by lawyers, when dealing with summary judgment procedures technical rigor is inappropriate where unresponsive and uninformed prisoners are involved." *Id.* Here, the defendants included a notice "pursuant to *Lewis v. Faulkner*" at the end of their motion for summary judgment, R.100, 103, but that notice did not meet the requirements of *Lewis v. Faulkner.* It was not "a short and plain statement that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion." *Lewis v. Faulkner,* 689 F.2d at 102. Although the defendants did include the text of Rule 56(e), *Lewis v. Faulkner* states that the text of Rule 56(e)

should be "in addition to rather than instead of the statement in ordinary English that we are requiring." *Id.*

Mr. Sceifers and Mr. Kincaid also state that the "district court did not exercise its 'responsibility' to 'provide the required information.'" Appellants' Br. at 24 n. 6; *see also* Appellants' Reply Br. at 10–11 ("Nor did the magistrate rectify this obvious defect, although he had an independent 'responsibility' to 'provide the required information' since Vail failed to do so."). The appellants apparently are speaking of Magistrate Judge Pierce. They do not discuss whether Magistrate Judge Lee's earlier attempt to provide the required information was adequate. Nor do they tell us what, if anything, to make of Mr. Sceifers' reply to Magistrate Judge Lee. At the end of the pretrial conference, Magistrate Judge Lee allowed the defendant 30 days to file a motion for summary judgment and then turned to the plaintiffs and said:

> I am sure you are familiar with the rule that requires you to respond to a motion for summary judgment in writing within 15 days, which you are obligated to contravene any statement with which you do not agree to as contained in any of the material submitted by the moving party.

Tr. at 42. Mr. Sceifers replied, "Yes, sir Lewis vs. Faulkner?" We believe that it is quite evident that the plaintiffs understood their obligations.

In any case, neither a failure to give notification under *Lewis v. Faulkner* nor an abuse of discretion in refusing to consider evidence on summary judgment calls for reversal if no prejudice resulted. *See Timms v. Frank,* 953 F.2d 281, 286 (7th Cir.1992). The plaintiffs have not suggested that, if properly notified of the need to submit affidavits, they would have included any information not contained in their complaint, their statements in the pretrial conference, and the letters then submitted. As we shall discuss below, we conclude that, even in light of the materials the

---

**7.** The rule of *Lewis v. Faulkner* has recently been extended to all pro se litigants. *See Timms v. Frank,* 953 F.2d 281, 285 (7th Cir.1992), *cert.* denied, —— U.S. ——, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992).

plaintiffs would have had the district court consider, summary judgment was appropriate.

### C. *Summary Judgment*

#### 1. Standard of review .

■ Our standard for assessing the grant of a summary judgment motion is clear. We review de novo the controlling law and the district court's conclusions. *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir. 1990). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *La Preferida*, 914 F.2d at 905. In determining whether summary judgment is proper, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). However, while any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, only reasonable inferences need be drawn. *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984); *Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir.1984). Finally, we note that "an appellate court may affirm a grant of summary judgment if the judgment or order is correct, although the reasons given by the trial court are erroneous." *Pfeil v. Rogers*, 757 F.2d 850, 866 (7th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The plaintiffs submit that, if the district court had considered the evidence from the preliminary hearing, as the plaintiffs requested, it would have found that the amount of the fee tendered by plaintiffs with their complaint was a material issue of disputed fact making entry of summary judgment improper. The plaintiffs also contend that the district court erred in its conclusion that Mr. Vail was entitled to absolute immunity; they argue that absolute judicial immunity does not extend to administrative or ministerial actions, even when carried out at the behest of a judge, and that filing a complaint accompanied by the correct filing fee is ministerial. They also argue that Mr. Vail is not entitled to qualified immunity. According to the plaintiffs, it was clearly established in 1983 that refusing to file a complaint accompanied by the proper filing fee violated the plaintiffs' constitutional right of access to the courts.

#### 2. Immunity [8]

■ This court has had occasion to address the issue of absolute judicial immunity on several occasions. *See Dellenbach v. Letsinger*, 889 F.2d 755 (7th Cir.1989), *cert. denied*, 494 U.S. 1085, 110 S.Ct. 1821, 108 L.Ed.2d 950 (1990); *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir.), *cert. denied*, 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989); *Eades v. Sterlinske*, 810 F.2d 723 (7th Cir.), *cert. denied*, 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986); *Lowe v. Letsinger*, 772 F.2d 308 (7th Cir.1985). These cases, read as a totality, establish this circuit's firm adherence to the functional analysis mandated by the Supreme Court in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) and more recently in *Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). This method-

---

**8.** Appellants also argue that because Mr. Vail did not raise the issue of absolute immunity in the district court, it is waived. However, "an appellate court can always consider the merits of any theory relied on by the district court." *Pittman v. Warden, Pontiac Correctional Center*, 960 F.2d 688, 690 (7th Cir.1992). "It is folly ...

to assert that an appeals court on review of a district court judgment cannot consider the merits of each and every theory the district judge relied upon in deciding the case." *United States v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir.), *cert. denied*, 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989).

ology mandates that, in approaching claims of absolute judicial immunity, we keep paramount in our analysis that "[a]bsolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation." *Burns*, 111 S.Ct. at 1943 (emphasis in original); *see Thompson v. Duke*, 882 F.2d 1180, 1185 (7th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990). When, as here, we are dealing with the application of the doctrine to auxiliary judicial personnel, we must remember the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts ... warrants this extension of the doctrine." *Scruggs*, 870 F.2d at 377. Certainly, when such personnel perform judicial or quasi-judicial functions such as the issuance of arrest warrants, they perform a function integral to the judicial process and receive the same protection as full-fledged judicial officers. *See Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir.1988) (clerk's issuance of warrant, although non-discretionary, a "truly judicial act" and so protected by absolute immunity). Likewise, when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is also available to the subordinate. *See Dellenbach*, 889 F.2d at 763; *Scruggs*, 870 F.2d at 377; *see also Henry*, 808 F.2d at 1238. Indeed, there is "general agreement that court officials ... who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity from suit as to those actions." *Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir.1991); *see, e.g., Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir.1988) (clerks have absolute immunity from actions for damages arising from acts they are specifically required to do by court order or at a judge's direction); *Green v. Maraio*, 722 F.2d 1013 (2d Cir.1983) (unfair to hold liable those who carry out orders of judges who are absolutely immune); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.

1981) (clerks have absolute immunity from actions for damages for acts carried out under court order or at judge's direction). Another circuit has extended the coverage of judicial immunity in the absence of explicit judicial direction and held that the commencement of an action by filing a complaint or petition is a basic and integral part of the judicial process. The clerk of court and deputy clerks are the officials through whom such filing is done. Consequently, the clerks qualify for quasi-judicial immunity unless these acts were done "in the clear absence of all jurisdiction." *Mullis v. United States Bankruptcy Court, Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir.1987) (citations omitted), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988).

■ We have no occasion to confront directly the situation presented to our colleagues in the Ninth Circuit. The facts of the present case bring it squarely under *Eades*, *Scruggs*, and *Dellenbach*. The acts of the clerks in returning the complaint and filing fee to the plaintiffs and directing them to file in small claims court were done at judicial direction and therefore are non-mechanical functions integral to the judicial process that are entitled to absolute immunity under the rationale articulated in *Scruggs* and *Dellenbach*.

3. The March return of the plaintiffs' check

■ As a final matter, we address the plaintiffs' first attempt to file, which occurred in March 1983. On this first attempt, the clerk's office returned the plaintiffs' check with a letter stating, "We are returning your check this date, as we do not have any filings or know what account you would like this to be placed." R.110. There is no indication that the actions taken by the clerk's office in March were taken at the behest of a judge, and the plaintiffs argue that the March return of their check constitutes an independent violation of their right of access to the courts or that a jury could so find.[9] Nevertheless,

---

9. The appellants note also that the affidavit at-

tached to Mr. Vail's motion for summary judg-

considering the documentary evidence and accepting as true the statements made by plaintiffs in their complaint and at the preliminary hearing, we must conclude that summary judgment was proper because the March return of the plaintiffs' check did not constitute an independent violation of the plaintiffs' right of access to the courts.

The appellants characterize the March return of their check as a deliberate refusal to file a proper complaint accompanied by a sufficient fee. However, they cite no evidence whatsoever to support their allegation that, in March, the clerks received a proper complaint and fee and deliberately failed to file it, instead sending the check back to the plaintiffs with a deliberate false statement that they did not know what the check was for. Although summary judgment is usually not appropriate in a case involving a weighing of conflicting questions of motive and intent, "summary judgment is proper 'where the plaintiff presents no indication of motive and intent supportive of his position.'" *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989) (quoting *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986)). Nevertheless, it is possible, and we assume it for purposes of this review, that a mistake was made or the complaint mislaid at the clerk's office by the clerks. If so, this lapse was a mere isolated incident of negligence and, under the facts set forth here, does not rise to the level of a constitutional violation actionable under section 1983.[10]

The appellants had adequate state remedies available to them. The Indiana Constitution assures civil litigants the right of access to the courts[11] and preserves the right to a jury trial.[12] Indiana law permits enforcement of those rights by providing that "[w]rits of mandate and prohibition may be issued to any and all inferior courts compelling the performance of any duty enjoined by law upon the inferior courts." Ind.Code § 34-1-58-1. "When an inferior court is required to perform an act of a ministerial character or to perform an act dictated by a clear legal duty, such as granting [a] request for trial by jury, an action for mandate is proper to compel the performance of such act." *Gillespie v. Gilmore*, 159 Ind.App. 449, 307 N.E.2d 480, 483 (1974) (right of jury trial in misdemeanor case); *Goshen City Court v. State ex rel. Carlin*, 153 Ind.App. 342, 287 N.E.2d 591 (1972) (mandate to compel change of venue); *State ex rel. Peoples Nat'l Bank & Trust Co. v. Dubois Circuit Court*, 250 Ind. 38, 234 N.E.2d 859 (1968) (when circuit court was without statutory or inherent authority to dismiss action, mandate awarded to compel court to reinstate cause); *State ex rel. Kleffman v. Bartholomew Circuit Court*, 245 Ind. 539, 200 N.E.2d 878 (1964) (mandate awarded to compel circuit court to reinstate petition to intervene).

ment did not controvert the plaintiffs' allegation that they had submitted the correct fee in March: in the affidavit, Mrs. Tylisz stated that the clerk's office had received a complaint and a $12 check in early summer and that when she asked the judge what to do, he told her to direct the plaintiffs to file in small claims court. According to Mr. Kincaid and Mr. Sceifers, "a statement that plaintiffs submitted a $12.00 check in 'early summer' is irrelevant to whether plaintiffs tendered $23.00 in *March*." Appellants' Br. at 23.

**10.** *See Gregory v. Nunn*, 895 F.2d 413, 415 (7th Cir.1990) (district court erred in dismissing case on grounds that plaintiff had alleged only negligent deprivation of access to courts; plaintiff had sufficiently alleged intentional deprivation); *see also Crawford–El v. Britton*, 951 F.2d 1314, 1318 (D.C.Cir.1991) (*intentional* interference with access to court violates constitution), *pet.*

for cert. filed, 60 U.S.L.W. 3816 (May 14, 1992); *Bailey v. Andrews*, 811 F.2d 366, 371 (7th Cir. 1987) ("in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim") (quoting *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). *But see McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir.1972).

**11.** Ind. Const. art. I, § 12 ("All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.").

**12.** Ind. Const., art. I, § 20 ("In all civil cases, the right of trial by jury shall remain inviolate.").

More fundamentally, the appellants have not alleged that any prejudice resulted from the March return of their check. This action of itself caused at most a *delay* in the plaintiffs' access to the court. While "[a] delay or interruption in pending or contemplated litigation may indicate a deprivation of constitutional dimensions," *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir.1990), we have required a showing of prejudice. *Chathas v. Smith*, 884 F.2d 980, 988 (7th Cir.1989), *cert. denied*, 493 U.S. 1095, 110 S.Ct. 1169, 107 L.Ed.2d 1071 (1990); *see also Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir.1992) ("even to survive a motion for summary judgment, the plaintiff must 'allege some quantum of detriment caused by . . . the interruption and/or delay of plaintiff's pending or contemplated litigation' ") (quoting *Hossman v. Spradlin*, 812 F.2d 1019, 1021–22 n. 2 (7th Cir. 1987)); *Martin v. Davies*, 917 F.2d 336, 341 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). Here, if the plaintiffs suffered any prejudice caused by the clerks' actions, such prejudice is attributable to their later refusal to file the plaintiffs' complaint in any but small claims court. That later refusal, as we have determined, was protected by absolute immunity.

## Conclusion

We conclude that the grant of summary judgment in favor of defendants was proper. Insofar as those defendants were acting pursuant to explicit judicial direction, they are entitled to absolute immunity. Summary judgment was also appropriate as to the other actions of which appellants complain because there exists no genuine issue of material fact that would establish a violation of the plaintiffs' federal constitutional rights. Therefore, the district court's grant of summary judgment is affirmed.

AFFIRMED.