**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1426

_____

EUGENE VILLARREAL; SOON SIK VILLARREAL,
                                                            Appellants

v.

STATE OF NEW JERSEY,
a/k/a JUDICIARY COURTS OF THE STATE OF NEW JERSEY, DUNS: 60-2158974,
a/k/a JUDICIARY COURTS OF THE STATE OF NJ DUNS: 03-8052028,
a/k/a SUPERIOR COURT OF NEW JERSEY,
a/k/a SUPERIOR COURT OF NEW JERSEY OFFICE OF FORECLOSURE;
MICHELLE M. SMITH, individually and severally;
SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY VICINAGE;
ELLEN KOBLITZ, individually and severally;
EDWARD A. JEREJIAN, individually and severally;
MENELAOS W. TOSKOS, individually and severally;
MICHAEL SAUDINO, a/k/a OFFICE OF COUNTY OF BERGEN SHERIFF, a/k/a
BERGEN COUNTY SHERIFF'S OFFICE OCCUPIED BY MICHAEL SAUDINO;
THOMAS J. SULLIVAN, individually and severally;
GERMAINE M. ORTIZ, individually and severally;
MARY J. AMOROSO, individually and severally;
DAVID L. GANZ, individually and severally;
STEVEN A. TANELLI, individually and severally;
JOAN M. VOSS, individually and severally;
TRACY S. ZUR, individually and severally

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-10444)
District Judge: Honorable Madeline C. Arleo

_____

PER CURIAM

Pro se Appellants Eugene Villarreal and Soon Sik Villarreal appeal from the District Court's order dismissing their complaint. For the following reasons, we will affirm.

I.

The following facts are taken from the complaint. In October 2006, the Villarreals entered into a mortgage agreement with J.P. Morgan Chase Bank for property located at 501 Lincoln Avenue in Ridgefield, New Jersey. J.P. Morgan later initiated a foreclosure action in the Superior Court of New Jersey. On May 13, 2016, the Superior Court entered a Final Judgment of Foreclosure and Writ of Execution. After the property was sold at the Bergen County Sheriff's Office in February 2018, the Villarreals were ordered to vacate the premises.

On June 12, 2018, the Villarreals filed a pro se complaint in the United States District Court for the District of New Jersey alleging that their rights had been violated in numerous respects during the foreclosure and Sheriff's Sale. They named as defendants: the State of New Jersey; the Superior Court of New Jersey Bergen Vicinage; Michelle M.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Smith, the Clerk of the Superior Court; and Superior Court Judges Ellen L. Koblitz, Edward A. Jerjian, and Menelaos W. Toskos (together, the "State Defendants"). They also named as a defendant Bergen County Sheriff Michael Saudino, as well as the seven members of the Bergen County Board of Chosen Freeholders.

The complaint, which is oftentimes rambling and difficult to follow, contained the following claims: (1) the State Defendants ordered the Villarreals to satisfy a Note that was unsatisfiable because it "demands payment in U.S. $, which is impossible for [the Villarreals] to satisfy as there are no United States Dollars currently in circulation, and there is no Act of Congress which declares a Federal Reserve Note to be a United States Dollar," Compl. 15, D.C. Dkt. No. 1; (2) the State Defendants violated their "Un-Alienable Rights Re-Affirmed Under Public Law 39-26[1] by claiming *In Personam* Jurisdiction over Eugene and Soon Villareal, living sentient beings and not artificial entity/legal persons, which is the only 'person' over which said court can obtain *in personam* jurisdiction in clear absence of all jurisdiction," Compl. 17;[2] (4) Sheriff Saudino violated their rights by enforcing the "void 'Judicially Robo Signed' 'Final Judgment' and 'Writ of Execution'" unlawful foreclosure judgment and conducting the sale of the property, id. at 24; (5) the

---

constitute binding precedent.

[1] Public Law No. 39-26 is the immediate predecessor of the Civil Rights Act of 1866, which is currently codified as 42 U.S.C. §§ 1981 and 1982. Because claims under §§ 1981 and 1982 necessarily include allegations of racial discrimination, which the Villarreals do not allege, we will liberally construe the pro se complaint as invoking § 1983, which is the vehicle by which private citizens may seek redress for violations of constitutional rights committed by state officials.

[2] These numbers track the Villarreals' numbering in the complaint. Pages 20 through 22 (which presumably include claim three), are missing from the copy of the complaint uploaded to the District Court docket as well the copy provided by the Villarreals in their

Freeholders, "as Sheriff Michael Saudino's Respondeat Superior's are fully responsible for the actions and misdeeds of the Sheriff and his department," id. at 25; (6) the Villarreals are entitled to a declaratory judgment deeming the Note fraudulent because "there are no United States Dollars in circulation to tender as cash," no loan was ever consummated, and no funds were ever transferred into an account belonging to the Villarreals, id. at 30; (7) the Villarreals were placed into involuntary servitude when induced into signing the Note, id. at 31, 33–34; and (8) the Superior Court and its judges seized their property in the clear absence of all jurisdiction, id. at 34–35.

The Villarreals alleged that, as a result of the defendants' actions, they suffered involuntary servitude, loss of title to real property, loss of personal property, damage to earning capacity, lost earnings, physical pain and mental anguish in the past and future, property damage, disruption of family harmony, and "[f]ear for Life when Sheriff of Bergen County will use men with guns to break down their door to evict them from their property." Compl. 36–38. By way of damages, the Villarreals sought $75 million for each claim, plus "[a]ctual damages," an order declaring the Note and mortgage null and void, and an order restoring title to their property. Id. at 39.

The State Defendants, Sheriff Saudino, and the Board of Freeholders all moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. By Letter Order entered on January 22, 2019, the District Court dismissed the complaint on the ground that it lacked subject-matter jurisdiction under the

appendix.

4

Rooker-Feldman doctrine. See D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923).[3]

This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's application of the Rooker-Feldman doctrine. Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006). We also exercise plenary review over the dismissal of a complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). We may affirm on any basis supported by the record. Fairview Township v. U.S. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

## III.

On appeal, the Villarreals raise several challenges to the District Court's application of the Rooker-Feldman doctrine. Leaving aside, however, whether the District Court's reliance on Rooker-Feldman was proper, the Villarreals' claims for damages under § 1983 face other legal bars identified in the defendants' motions to dismiss.

First, the State of New Jersey and the Superior Court are entitled to Eleventh Amendment immunity from this suit. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by cit-

---

[3] In the letter order dismissing the complaint, the District Court also denied the Villarreals' motion for a preliminary injunction. They do not challenge that ruling on appeal. Therefore, we deem it waived. See Voci v. Gonzales, 409 F.3d 607, 609 n.1 (3d Cir. 2005).

izens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). Eleventh Amendment immunity protects not only states but also state agencies and departments, such as the Superior Court here, "that are so intertwined with them as to render them 'arms of the state.'" Karns v. Shanahan, 879 F.3d 504, 513 (3d Cir. 2018) (quoting Bowers v. NCAA, 475 F.3d 524, 545 (3d Cir. 2007)). While it is not entirely clear from the complaint, it appears that the Villarreals sought to proceed under 42 U.S.C. § 1983, see supra note 1, and § 1983 does not abrogate New Jersey's immunity. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979). Further, New Jersey has neither consented to suit nor waived its Eleventh Amendment immunity here. Accordingly, the Villarreals' claims against the State and the Superior Court are barred.

The Villarreals' claims against the Superior Court judges who presided over the foreclosure proceedings are also barred. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). This holds true even if the action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356–57 (1978)). Here, the Villarreals' allegations against Judges Koblitz, Jerejian, and Toskos relate to actions they took as judges—namely, their enforcement of an allegedly unconscionable and unenforceable Note. Although they allege that the judges (a) lacked in personam jurisdiction over their sentient beings, and (b) issued orders in the wrong venue, these claims are frivolous and do not show a clear absence of jurisdiction under Azubuko and Stump.

6

Clerk Smith is also entitled to quasi-judicial immunity for carrying out a facially valid Writ of Execution. See Kincaid v. Vail, 969 F.2d 594, 601–02 (7th Cir. 1992).

Next, Sheriff Saudino was immune from liability for enforcing the foreclosure judgment and conducting the sale of the property. "[L]aw enforcement officials executing a facially valid court order are protected by absolute quasi-judicial immunity." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994) (emphasis omitted). Although the Villarreals allege that Sheriff Saudino is liable because the sale was unlawful, they do not allege any facts suggesting that the Sheriff had reason to question the validity of the state-court foreclosure judgment. Therefore, he too is immune from this suit. See, e.g., Henry v. Farmer City State Bank, 808 F.2d 1228, 1238–39 (7th Cir. 1986) (holding that a sheriff who was acting pursuant to an official court order to enforce a validly entered judgment was entitled to quasi-judicial immunity).[4]

Lastly, we conclude that the Villarreals failed to state a claim against the seven members of the Board of Freeholders based on their alleged failure to supervise the Sheriff's Office. Even accepting the Villarreals' allegation that the Board of Freeholders is the managing body of the Bergen County Sheriff's Office and that they have a duty to supervise that office, liability under § 1983 cannot be based on respondeat superior, Rizzo v. Goode, 423 U.S. 362, 375–76 (1976), and the Villarreals failed to identify any specific policy, procedure, or custom of the Board of Freeholders to support a § 1983 claim

---

[4] Sheriff Saudino is also shielded by the doctrine of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v.

against a local government, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92 (1978). Therefore, the Villarreals failed to state a claim against the Freeholders.

In their brief, the Villarreals also argue that the District Court erred in dismissing the complaint without providing them with an opportunity to amend it. However, given our conclusion that most of the defendants are immune from suit and that the Villarreals' remaining allegations against the Freeholders were woefully insufficient, amendment would have been futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

IV.

We have considered Appellants' remaining arguments on appeal and conclude that they are meritless. Accordingly, we will affirm the District Court's order dismissing the complaint.

---

Fitzgerald, 457 U.S. 800, 818 (1982)).